508 S.E.2d 50

**Edwin S. TAYLOR, Appellant,**

v.

**Delores S. TAYLOR, Respondent.**

**No. 2899.**

Court of Appeals of South Carolina.

Submitted Oct. 6, 1998.

Decided Nov. 16, 1998.

210

212

L. Mendel Rivers, Jr., of Mt. Pleasant, for appellant.

Marvin I. Oberman and Harold A. Oberman, of Oberman & Oberman, of Charleston, for respondent.

HUFF, Judge:

In this domestic action, Edwin S. Taylor (Husband) appeals from the family court's award of attorney's fees to Delores S. Taylor (Wife). We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

The action is before us for the second time, but represents the third time Husband has sued Wife. The parties were divorced in January 1984. An agreement between the parties settled issues of equitable distribution, alimony and child support, and was incorporated by the family court into the divorce decree.

In 1988 Husband sued Wife seeking permanent, sole custody of their minor child. In a detailed 26–page opinion, the family court ruled against Husband. It further ordered him to pay $11,183.63 of Wife's attorney's fees and costs. Hus-

band initially appealed this decision, but ultimately asked that the appeal be dismissed.

In 1989 Husband again sued Wife, this time seeking a reduction or termination of alimony, a reduction in child support, and an allocation of the support payments between alimony and child support. The court made a number of findings with regard to Husband's credibility, including:

19. [Husband]'s financial declarations do not coincide with his testimony in Court under oath. He has consistently failed to reflect ownership interest of his parents and alleged partners in his financial declarations prepared to secure loans from institutions, while testifying to such relationships when in court.

20. While [Husband] shows a boat or boats valued at Twenty–One Thousand ($21,000.00) Dollars on his January 1, 1989 Financial Statement, he now claims it belongs to his [current] wife and that it is relatively valueless.

. . . . .

22. [Husband] has chosen to vacillate in his testimony concerning the values of his property interests between Financial Declarations, depositions and court testimony to the extent that the credibility of his testimony is highly in doubt.

23. The evidence reflects that [Husband] is the owner of 78% of the Atlantic House Restaurant, with his mother owning 13% and his father owning 9%. This sheds no light on and makes [Husband]'s testimony of turning One Hundred Thousand ($100,000.00) Dollars of the insurance proceeds over to his mother totally illogical.[1]

. . . . .

26. [Husband] by his deceptive and deliberate efforts to mislead and manipulate the court has created a situation where he has little credibility and has worsened his dilemma by his failure to be honest and forthright.

---

1. At the time of the divorce, Husband was a restauranteur operating The Atlantic House restaurant. In 1990 Hurricane Hugo completely destroyed the restaurant, and Husband received $330,000 in insurance proceeds.

The court further found Husband, "in spite of his alleged losses," "to be substantially wealthier" than when he divorced Wife. For a number of reasons, however, the court decreased Husband's support payments. The court also ordered Husband to pay $2,000 towards Wife's legal expenses. Although Husband appealed this order as well, the appeal was subsequently dismissed when Husband did not pursue it. Wife was thereafter awarded $1,500 under Rule 222, SCACR, in payment of appellate attorney's fees.

Husband sued Wife again in 1993, again seeking a reduction of alimony and child support, claiming he had a "negative net worth." The court declined to find a change in circumstance sufficient to justify Husband's claims. Rather, the court found Husband's real estate holdings had appreciated in value and some had been sold at a substantial profit. Husband was employed and receiving rental income and royalties.

Husband had transferred several properties to family members for a $5.00 consideration; however, the court found Husband "in reality retains a strong equitable interest in the properties and their rental income." The court concluded Husband

cannot use the "transfer" to family members, be it real or otherwise, to feign a reduction in income and personal net worth, to ask the Court to lessen his child support and alimony obligations, especially in light of the original Divorce Decree and Agreement in which [Husband] retained control of the vast majority of real property in exchange for his support obligations.

Although the court refused Husband's request for a reduction in alimony or child support, the court denied Wife's request for attorney's fees, as "[s]he did not present a case in chief for herself, but relied exclusively on a very full and detailed cross examination to disprove [Husband]'s case."

Again, Husband appealed and, again, abandoned the appeal. Wife, however, pursued an appeal of the court's attorney's fees decision. We reversed the court on this point, finding the court erred in not considering proper factors in making its decision. *Taylor v. Taylor*, Opinion No. 95–UP–239 (filed September 25, 1995). We remanded the case to the family court judge to receive evidence de novo to determine if

attorney's fees should be awarded. We also ordered Husband to pay Wife appellate attorney's fees in excess of $750,.the amount to be decided by the family court.

On remand a hearing was held during which Wife's two attorneys were examined and cross-examined. Wife's attorneys submitted affidavits, copies of bills submitted to Wife, and the parties' financial declarations. Wife also presented expert testimony on the issue of attorney's fees. The court found, among other things, that Wife had achieved beneficial results. The court also found that at the time of the fee hearing, husband still had substantially more assets and income earning potential than wife and was no longer required to pay child support. Further, Husband had instituted various actions and appealed from these actions such that, if attorney's fees were not allowed, Husband would be able to decrease wife's standard of living despite the fact he did not prevail on the merits of his cases. The court found Wife was entitled to the full amount of her attorney's fees and awarded $13,352.68 for her defense below, and $9,906.19 to cover the costs of the appeal. Husband again appeals.

## LAW/ANALYSIS

█▌ In appeals from family court, this court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence. *Ellerbe v. Ellerbe,* 323 S.C. 283, 473 S.E.2d 881 (Ct.App.1996). We are not, however, required to disregard the findings of the trial judge, who saw and heard the witnesses and is in a better position to evaluate credibility. *Id.*

█▌ Generally, attorney's fees are not recoverable unless authorized by statute or contract. *Burns v. Burns,* 323 S.C. 45, 448 S.E.2d 571 (Ct.App.1994). South Carolina Code Ann. § 20–7–420(38) (Supp.1997) authorizes the family court to order payment of suit money to either party. *Green v. Green,* 320 S.C. 347, 465 S.E.2d 130 (Ct.App.1995). The award of attorney fees and costs is a matter within the sound discretion of the trial judge. *Calhoun v. Calhoun,* 331 S.C. 157, 501 S.E.2d 735 (Ct.App.1998). The award will not be reversed on appeal absent an abuse of discretion. *Id.* at 166, 501 S.E.2d at 739.

## ATTORNEY'S FEES AND COSTS

Husband maintains generally the family court judge erred in awarding Wife the total of her requested fees. He makes the following contentions in particular.

1. *Number of attorneys; number of hours; difficulty of case*

 Husband contends Wife did not need to employ two attorneys. This court, however, will not criticize a party for hiring more than one attorney, provided their work is not duplicated and the complexity of the case demands it. *Mallett v. Mallett*, 323 S.C. 141, 473 S.E.2d 804 (Ct.App.1996). Husband has not shown the attorneys duplicated services. *See Josey v. Josey*, 291 S.C. 26, 351 S.E.2d 891 (Ct.App.1986) (wherein court affirmed award for two attorneys where record failed to disclose duplicated attorney services, but showed clear delineation of duties). In fact, Wife has shown by hiring two attorneys, who were partners, she was actually able to incur lower attorney's fees. The less experienced attorney charged at a lower rate; he could, therefore, perform time-consuming duties that did not require greater experience at a cheaper cost than his more-experienced, higher-priced colleague. We find no abuse of discretion.

 Husband adds the attorneys spent far too many hours on the case. He complains these same attorneys were involved with the previous three cases and, thus, should not have had to spend so much time on the instant suit. We disagree.

 The reasonableness of the number of hours billed is determined according to (1) the nature, extent, and difficulty of the case, and (2) the time necessarily devoted to the case. *Glasscock v. Glasscock*, 304 S.C. 158, 403 S.E.2d 313 (1991). Husband was the cause, in large part, of the considerable amount of time Wife's attorneys spent on this case. Because of Husband's lack of cooperation, Wife was forced to make a motion for discovery, as well as prepare a motion to compel discovery. When Husband finally responded to discovery requests, he produced boxes full of unorganized documents which contained many irrelevant materials.

Wife's attorneys introduced, without objection, a letter to Husband's counsel detailing their strenuous efforts to depose Husband. Husband's deposition took 2 1/2 hours and involved 55 exhibits. Cross-examination of Husband during trial took 2 hours and Wife's attorneys presented 40 exhibits. Because of Husband's transfers of assets, the attorneys had to review old depositions and search the public records to determine what happened to various pieces of property. They were forced to retrieve records from Husband's bank and subpoena his personal records. Without the efforts of her attorneys, Husband would have presented unchallenged testimony to the court that he had a significant negative net worth. Instead, the court found Husband to be better off financially than at the time of the divorce. On this record, we find substantial support for the court's decision to award Wife all the requested fees.

 Husband decries the court's award of 10 additional hours spent by Wife's attorneys in preparing for the fees hearing, without the support of an affidavit. We do not see the need for an affidavit in this case. The attorneys were both attendant at trial, under oath, and subject to cross-examination. We find no error.

## 2. *Expert fees*

 Wife engaged an attorney to testify as to the reasonableness of her attorneys' billing rate and the time expended; their reputation in the community; their skills, and the quality of their work. Husband contests on appeal the $800 fee charged by Wife's expert for his four hours of work. Given the expertise and position of high professional standing of Wife's expert, we fail to detect an abuse of discretion in this portion of the award.

## 3. *Costs*

 Husband argues the family court erred in awarding Wife's costs of litigation because Wife's attorneys charge for overhead expenses, in addition to an hourly rate. He asserts "costs should not be charged to a client, if the attorney is also going to charge the client a standard hourly billing rate."

Husband relies, mistakenly, on *In the Matter of Jennings,* 321 S.C. 440, 468 S.E.2d 869 (1996). Jennings had randomly chosen a client to which to bill a Lexis subscription rate when she had not used Lexis for this client. The supreme court held Jennings should not have charged an overhead item to a client, "particularly an overhead item from which the client received absolutely no benefit." *Id.* 321 S.C. at 445, 468 S.E.2d at 872. Husband has not shown Wife did not receive the benefit of the costs charged to her. We find no abuse in Wife being charged for items such as photocopies, courier service, facsimiles, reporting costs, extra postage and filing fees.

### 4. *Lack of attorney's fees affidavit*

Husband complains the court erred in awarding attorney's fees when Wife's attorneys did not prepare an affidavit or request a bifurcated hearing as to attorney's fees in the initial action, thereby prolonging the litigation and inflating the attorneys' hours. We find no merit to this argument. During the hearing on fees, both of Wife's attorneys testified, although not reflected in the prior record, a decision was made between counsel and the court to wait until the court made a decision as to who would prevail in the action before submitting evidence on attorney's fees.

### 5. *Finding on prevailing party*

Husband charges the court erred in finding he did not prevail "on the merits of his cases." Husband correctly states he did procure a reduction of support payments in the second case. However, it is clear from the various actions and appeals instituted by Husband, the wife has prevailed entirely on all the cases, with the exception of the initial action in the second case. Even there, Husband sought, alternatively, a termination of alimony, but was unsuccessful in that endeavor. The record also shows Husband initially appealed from that order. Thus, the extent to which he prevailed in that action is questionable. Even though the finding was minimally inaccurate, Husband was not prejudiced by this finding and, therefore, we find no error. *See Doe v. Doe,* 324 S.C. 492, 478 S.E.2d 854 (Ct.App.1996) (appellant seeking reversal must show both error and prejudice).

## 6. *Standard of living*

 Husband asserts the court erred in finding Wife's standard of living would decrease should she have to pay her own attorney's fees. Similarly, Husband contends the court erred in finding his standard of living would not decrease if Husband was ordered to pay the fees. We disagree.

The family court's 1994 order in the instant action noted Husband's substantial real estate holdings and the fact that he was a substantially wealthier man than at the time of his divorce. The order further found Husband received rental income of over $15,000 per year; earned salary of $2,000 per month; received royalty income; and held a $122,536 note that would be payable, at least in part to him, in 1996. These findings were not appealed and thus are the law of the case. *See Lindsay v. Lindsay,* 328 S.C. 329, 491 S.E.2d 583 (Ct.App. 1997), cert. denied (June 18, 1998) (unchallenged ruling is the law of the case). Wife's financial declaration reveals her only income is alimony of $1,400 per month and a salary of $859.32 per month. Wife's only asset is her home.

Based on this record, we have no trouble affirming the family court's decision. Although the payment of attorney's fees may cause Husband some hardship, the payment for Wife would be impossible.[2] We find no abuse of discretion. .

## 7. *Husband's condemnation award*

 Husband maintains the family court erred in finding he received a large condemnation award following the loss of his restaurant. We find no merit in this argument as Husband himself testified to the amount he received and how he spent it, including the expenditure of $100,000 to open a new business. Further, even if we were to find error in the ruling, such error was harmless, as this finding is not needed to support the court's award.

---

**2.** Husband argues Wife has already paid all but some $5,000 of the fees, but testimony at the hearing showed Wife borrowed money from her mother and others to do so. We are not here concerned with the ability of Wife's mother to pay the fees, but rather the effect the payment by Wife would have on Wife's standard of living.

## CONCLUSION

In *Anderson v. Tolbert,* 322 S.C. 543, 473 S.E.2d 456 (Ct. App.1996), this court opined:

The appellate courts of this state have not been careful to separate the question of entitlement to attorney fees from the question of determining the appropriateness of the amount of the award. However, S.C.Code Ann. § 20–3–120 (1985) makes it clear that in order for a spouse to be entitled to suit money, the claim must be "well founded." The burden of proving that a claim is well founded is on the party seeking suit money. *Darden v. Witham,* 263 S.C. 183, 209 S.E.2d 42 (1974) (overruled in part on other grounds by *Glasscock v. Glasscock,* 304 S.C. 158, 403 S.E.2d 313 (1991)); *Gainey v. Gainey,* 279 S.C. 68, 301 S.E.2d 763 (1983).

322 S.C. at 547, 473 S.E.2d at 458.

In the case at hand, the evidence shows Husband has brought three family court actions against Wife and appealed all three. Considering the overall merits of the cases and the appeals from same, Wife has consistently prevailed on most of the issues, yet this has not tempered Husband's propensity to haul Wife back into court time and time again. Husband clearly is in a financial position to afford these suits, while Wife is not. We further have the "added dimension of an uncooperative husband who did much to prolong and hamper a final resolution of the issues in this case. An adversary spouse should not be rewarded for such conduct." 322 S.C. at 549, 473 S.E.2d at 459. To quote our late colleague: "One who intends to build a tower should first count the cost, whether he has sufficient to finish it. Luke 14:28. This court does not sit to relieve self-inflicted wounds." *Rish v. Rish,* 296 S.C. 14, 17, 370 S.E.2d 102, 104 (Ct.App.1988) (Bell, J., concurring). We find Wife's claim to be well-founded, and conclude the family court's decision to award Wife attorney's fees, as well as the amount awarded, is fully supported by the record.

For the reasons set forth above, the decision of the family court awarding Wife all her attorney's fees and costs is hereby

**AFFIRMED.**

GOOLSBY and HOWARD, JJ., concur.